UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TITO JONATHAN AVILA PERDOMO,

                Petitioner,

v.

UNKNOWN PARTY et al.,

                Respondents.
_____/

Case No. 1:26-cv-1960

Honorable Robert J. Jonker

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will dismiss Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.[1]

## I.      Procedural History

In an order entered on July 9, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 7.) Respondents filed their response on July 14, 2026, (ECF No. 8.)

## II.      Relevant Factual Background

Petitioner is a citizen of Venezuela who entered the United States in 2017 "as a nonimmigrant Visitor For Pleasure (B2) with authorization to remain in the United States for a

---

[1] Because the Court will dismiss Petitioner's petition without prejudice as set forth herein, the Court Petitioner's pending motions seeking relief during the adjudication of his petition (ECF Nos. 4, 5) are moot.

temporary period not to exceed April 21, 2018[.]" Op., *Avila Perdomo v. Warden* (*Avila Perdomo I*), No. 1:26-cv-1530 (W.D. Mich. Jun. 4, 2026) (ECF No. 10). After remaining in the United States, Petitioner applied for and received Temporary Protected Status. [2] (Pet., ECF No. 1, PageID.3.)[3]

On December 31, 2025, Petitioner was arrested by ICE agents. Op., *Avila Perdomo I*, (W.D. Mich. Jun. 4, 2026) (ECF No. 10). On March 16, 2026, Petitioner received a bond hearing pursuant to § 1226(a), at which time the Immigration Judge denied Petitioner's request for bond,

---

[2] Under 8 U.S.C. § 1254a, the Secretary for the Department of Homeland Security

> may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other "extraordinary and temporary conditions," unless the Secretary "finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States."

*Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." *Id.* (quoting 8 U.S.C. § 1254a(a)(1), (b)(2)). Additionally, there are other restrictions, including, for example, that applicants for TPS "must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States.'" *Id.* (quoting 8 U.S.C. § 1254a(c)(2)(B)(i)). Further, "TPS does not provide beneficiaries with a pathway to permanent resident status, nor does it include any right to petition for visas on behalf of family members in the United States or abroad." *Id.*

[3] With respect to TPS for Venezuela, "[o]n January 17, 2025, Secretary Mayorkas extended the 2023 [TPS] Designation by eighteen months, through October 2, 2026." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 751 (9th Cir. 2026) (footnote and citation omitted). "The extension was set to become effective on April 3, 2025," the day after the 2023 TPS Designation was due to expire. *Id.* (citation omitted). "On January 24, 2025, DHS began drafting the decision to vacate the TPS extension" for Venezuela. *Id.* Thereafter, on January 26, 2025, "DHS began drafting a termination of Venezuela's TPS." *Id.* On January 28, 2025, Secretary Noem signed off on the decision to vacate the January 17, 2025, extension of TPS for Venezuela, meaning that the 2023 TPS Designation for Venezuela effectively expired on April 2, 2025. (*Id.*) Subsequently, on February 1, 2025, "Secretary Noem signed off on the termination [of TPS]" for Venezuela. *Id.* (citation omitted). Secretary Noem did not terminate the 2021 TPS Designation for Venezuela, however, the 2021 TPS Designation "had only been extended to September 10, 2025." *Id.* (citation omitted).

stating that Petitioner "is a danger to the community" because Petitioner "has 2 arrests for DUI within the past 30 months." *Id.* Petitioner is not subject to a final order of removal. *Id.*

This is Petitioner's second § 2241 petition before this Court. On May 8, 2026, Petitioner filed his first § 2241 petition in *Avila Perdomo I*. In *Avila Perdomo I*, the Court dismissed Petitioner's petition for writ of habeas corpus without prejudice because there is no indication in the record that the Immigration Judge applied an unconstitutional burden of proof at Petitioner's bond hearing. Op. & Jud., *Avila Perdomo I*, (W.D. Mich. Jun. 4, 2026) (ECF Nos. 10, 11).

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Discussion

Petitioner first seeks habeas relief based upon his prior TPS status. However, on June 25, 2026, the Supreme Court held that 8 U.S.C. § 1254a(b)(5)(A) precludes judicial review of all non-constitutional claims related to TPS. *Mullin v. Doe*, No. 25–1083, 2026 WL 1825840, at *7 (U.S. June 25, 2026). Accordingly, Petitioner is not entitled to relief based upon an alleged violation of § 1254a(d)(4) or his prior TPS, and the Court will dismiss any such claims without prejudice.

Second, Petitioner claims that his detention has been unreasonably prolonged and that he should be provided a new bond hearing because "[c]ircumstances have materially changed since Petitioner's prior custody review." (Pet., ECF No. 1, PageID.2.)

Noncitizens "who are held in custody under 8 U.S.C. § 1226(a), while their petitions for review of their removal orders are pending, are entitled to a bond hearing before an immigration judge." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted); *see, e.g.*, *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *2–3 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *2–4 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *2–4 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *2–3 (W.D. Mich. Dec. 12, 2025). If the noncitizen is "dissatisfied with the [immigration judge's] bond determination," the noncitizen ordinarily must "file an administrative appeal so that 'the necessity of detention can be reviewed by . . . the BIA.'" *Leonardo*, 646 F.3d at 1160 (citation omitted). There are exceptions to this general rule. For example, the United States Court of Appeals for the Sixth Circuit has noted that due process challenges that are not premised on "correctable procedural errors" generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that "an alien's due process challenge generally does not require exhaustion" because "the BIA lacks authority to review constitutional challenges," but noting that an "alien must raise correctable procedural errors to the BIA"). And, if the noncitizen believes that the circumstances have changed materially since an initial bond redetermination, the noncitizen can request a subsequent bond redetermination in writing. 8 C.F.R. § 1003.19(e). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160.

In this case, Petitioner claims that "[c]ircumstances have materially changed since Petitioner's prior custody review," (Pet., ECF No. 1, PageID.2), but Petitioner does not contend that he has requested a subsequent custody redetermination hearing based upon materially changed circumstances. Under these circumstances, the issues raised in the present § 2241 petition are issues that must first be raised to the BIA or before the immigration court as applicable. Therefore, Petitioner has not exhausted his administrative remedies, and Petitioner has not demonstrated grounds for excusing the exhaustion requirement in this case.

### **Conclusion**

For the reasons discussed above, the Court will enter a judgment dismissing the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:    July 21, 2026                    /s/ Robert J. Jonker
                                           Robert J. Jonker
                                           United States District Judge